UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:21-CR-106 |
| AMBER RENEE WOOD, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the United States' Motion for Review of Release Order [Doc. 9], requesting that the order be overturned, and that Defendant be detained pending trial. The Order was issued by Magistrate Judge Karen L. Stevenson in the Central District of California on March 1, 2022, in *United States v. Wood*, No. 2:22-mj-833 (C.D. Cal. March 1, 2022). This Motion was referred to the undersigned for report and recommendation by District Judge Clifton L. Corker pursuant to 28 U.S.C. § 636(b). The Court held a hearing on the Motion for Review on April 18, 2022. Appearing before the Court were Assistant United States Attorney Mitchell Blake Watson on behalf of the Government, Defendant's counsel, Kaycee Marie Roberts, and Defendant.

For the reasons discussed herein, the Court **RECOMMENDS** that the United States' Motion [Doc. 9] be **GRANTED** and that Defendant be detained pending trial in this matter.

I.     **BACKGROUND**

Count One of the Indictment [Doc. 3] charges Defendant with conspiracy to knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, and Count Three charges Defendant with knowingly and intentionally distributing of 5 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance.

Defendant was arrested on these charges in the Central District of California on February 16, 2022, on the outstanding arrest warrant resulting from the Indictment and appeared before Judge Stevenson in that District for an Initial Appearance on March 1, 2022. The United States initially sought to detain Defendant pending trial, citing the presumption in favor of detention, and asserting that no condition or combination of conditions would reasonably assure her appearance as required or the safety of any other person in the community. *See* [Doc. 7-13].

During her interview with Pretrial Services in California, Defendant reported that she and her wife, Salina Flores ("Ms. Flores") own a home in Tujunga, California and had been residing there for approximately one year. Defendant further stated that there was no mortgage on the property.[1] Prior to moving to Tujunga, Defendant had been residing in Tennessee since 2003. Defendant reported she had been unemployed since 2016 and had no income aside from general relief and food stamps while Ms. Flores reported that she is retired and works part-time as an accountant.

At that time, Defendant told Pretrial Services that she had not used non-prescription mind-altering drugs for 2-3 years but prior to that used methamphetamine and heroin daily for years in addition to occasional marijuana use and a period of cocaine use from 2012 to 2014. She advised that she has never attended substance abuse treatment and was not interested in receiving it. Defendant reported being diagnosed with PTSD, bipolar disorder, and manic depression and said she took Lithium and Trazadone to address the conditions. She further advised that she was hospitalized in March 2021 after attempting suicide.

Defendant reported that she has prior felony convictions. Additionally, a records check revealed that Defendant had an outstanding warrant for violation of probation in Carter County, Tennessee. The information self-reported by Defendant was verified by Ms. Flores.

---

[1] Defendant estimated the value of the home at $250,000 but Ms. Flores estimated the value at $850,000.

Based upon the information available, Pretrial Services recommended Defendant be released due to her stable residence, lack of foreign travel or ties, bail resources, and ties to the community, in addition to her sustained period of sobriety and on-going mental health treatment. As a result, the Government withdrew its request for detention, and no detention hearing was held. *See* [Doc. 7-11].

Defendant was then released on a $75,000 appearance bond to be secured by the deed to the home she and her wife owned in Tujunga, California, and certain conditions of release. [Doc. 7-11]. Conditions of release included drug testing, a mental health evaluation, and a requirement that Defendant clear any outstanding warrants within 180 days of release from custody. *Id.*

After she was released, the Court was advised that Defendant and her wife might not actually possess legal title to the residence in which they lived. [Docs. 18, 27]. As a result, Defendant's $75,000 appearance bond was modified to $95,000, $75,000 of which was met by an Affidavit of Surety without Justification by Ms. Flores and an additional $20,000 surety bond. *Id.*

Then on March 16, 2022, the Government filed the motion at issue here [Doc. 9], requesting that the Court review and overturn the release order entered in the Central District of California in order to reasonably assure the appearance of Defendant and reasonably ensure the safety of the community as provided in 18 U.S.C. § 3142. Defendant filed a Response in Opposition [Doc. 19]. On April 18, 2022, Defendant appeared before the undersigned for arraignment in the Eastern District of Tennessee and for a hearing on the United States' motion.

## II. SUMMARY OF INFORMATION OFFERED AT THE APRIL 18, 2022, HEARING

The United States supplemented the information available to Judge Stevenson during the California proceedings. Although reporting no illegal drug use for a period of 2-3 years during her initial interview with Pretrial Services in California, when Defendant reported for her pretrial

supervision intake on March 8, 2022, Defendant changed her story. She was asked to submit to a drug screen but claimed to be unable to produce enough urine for a screen. Defendant advised Probation Officer Damion Davis ("Officer Davis") that she had last used heroin on February 16, 2022, the date of her arrest. Subsequently, Defendant submitted to a drug screen on March 27, 2022, and tested presumptively positive for opiates.[2]

The United States further advised that Defendant's criminal history was more significant than revealed in the original pretrial report considered by Judge Stevenson. While that pretrial report noted that Defendant had an outstanding warrant for a probation violation out of Carter County, Tennessee it did not include any information regarding her outstanding warrants in Washington and Greene Counties. Moreover, Defendant's criminal history includes more than 10 failures to appear, numerous probation violations, and four prior felony convictions, at least one of which resulted in Defendant serving a four-year prison sentence in the Tennessee Department of Correction.

The Government also proffered that Defendant's wife, with whom she was residing in California, has a 2018 felony conviction which Pretrial Services in this District learned when investigating whether Ms. Flores would be an appropriate third-party custodian for Defendant. Specifically, Ms. Flores was convicted of four counts of Prescription Fraud in Sullivan County, Tennessee Criminal Court on July 9, 2018, was sentenced to two years of probation, and presently has an outstanding violation of probation warrant resulting from that probation. Pretrial Services further learned that Ms. Flores did not actually retire. Instead, her nursing license was suspended because of her convictions, and she never attempted to obtain reinstatement of the license. Moreover, while she reported working as a "part time accountant", Pretrial Services learned that Ms. Flores was actually as a part-time desk clerk and night auditor at a hotel. Further, neither

---

[2] The lab reports for this screen were still outstanding at the time of the hearing; however, they were received on April 19, 2022, and confirmed Defendant was positive for extended opiates and Oxycodone/Oxymorphone. As a result, a Petition to Revoke Defendant's Pretrial Release was issued. [Doc. 37].

Defendant nor Ms. Flores have a valid driver's license, yet it appears that they drove from California to Tennessee by themselves.

Counsel for Defendant argued that the conditions of pretrial release imposed on Defendant are sufficient and pointed to Defendant's journey from California to Tennessee as proof that Defendant is not a flight risk. Defense counsel also pointed out that while on pretrial release in California, Defendant has completed a mental health assessment and has been receiving ongoing mental health treatment. Defendant's counsel asserted that Defendant's move to California was an attempt to get out of East Tennessee and make a fresh start and noted that Defendant had not been in any trouble since moving to California.

Upon inquiry from the Court regarding Defendant's housing situation, Defendant's counsel advised that Defendant and her wife do have a deed for a residence in Tujunga, California but there are serious questions regarding its validity. Despite Defendant and her wife valuing the home at between $250,000 and $850,000, they allegedly "purchased" the home through a website for the sum of $4,000. It was unclear whether Defendant and Ms. Flores would be able to continue to reside in the home if they return to California.

In response to Defendant's arguments, the United States asserted that although Defendant had not been arrested since moving to California, she has continued to use illegal drugs based on her statement to Officer Davis and her presumptively positive drug screen. Finally, the Government argued that if Defendant is allowed to remain on pretrial release and return to California where she arguably has no stable residence, it would be easy to lose track of her and difficult to assure her appearance in court, particularly given her long-standing history of failing to appear. Based on Defendant's history of failure to appear and continued drug use, the United States argued detention is necessary to assure Defendant's presence and the safety of the community.

Case 2:21-cr-00106-DCLC-CRW   Document 41   Filed 04/27/22   Page 5 of 10
PageID #: 113

### III. STANDARD OF REVIEW

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4).

In the instant case, because of the specific crime charged a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). Here, the Indictment provides the necessary probable cause to believe that Defendant has committed an offense under the Controlled Substances Act for which she faces a maximum sentence of ten years or more. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)); *see also United States v. Foster*, No. 20-5548, 2020 WL 6791572, at * 1 (E.D. Tenn. July 20, 2020) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the Defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy the burden of production, the defendant must present at least some evidence that she is not a danger or a flight risk. *Id.* Even when the defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the

order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the defendant *de novo*.[3] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that de novo review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075 at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

IV. ANALYSIS

As discussed above, the Court finds that the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(A) that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community" applies in this case, because the Defendant is charged with a violation of the Controlled Substances Act for which the maximum potential penalty is ten years or more. At the same time, the Court notes that the bar is low to rebut the presumption and finds that Defendant has initially met that low bar by avoiding any new criminal charges since moving to California and addressing her mental health issues of her own accord through counseling and medications. As already noted, that finding does not end the inquiry, and the Court must now consider the presumption merely as one of the several factors used in analyzing whether release is appropriate. *See Stone*, 608 F.3d at 945.

---

[3] Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the Government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC- REW, 2017 WL 5711438, *2–3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *report and recommendation adopted by* 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell, CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all the evidence offered to that point. *Shaw*, 2017 WL 5711438. at *3.

First, the Court finds that the nature and circumstances of the offense charged weigh in favor of detention. 18 U.S.C. § 3142(g)(1). Defendant is charged with serious drug offenses that involve introducing large amounts of drugs into the community. Additionally, Ms. Flores reported that Defendant has prior associations with a drug cartel. At the same time, when considering factor number two, the weight of the evidence, the Court notes that the United States did not provide any detail regarding the strength of its case against Defendant, leaving the Court to determine that this factor weighs in favor of Defendant's release.

The third factor requires the Court to consider Defendant's history and characteristics, including her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," along with evidence of whether the Defendant was on conditions of release at the time of the current offense. 18 U.S.C. § 3242(g)(3)(A)-(B). As set forth in detail above, there are numerous inconsistencies in the information reported to Pretrial Services by Defendant which raise serious concerns regarding Defendant's lack of candor about her background and circumstances. Defendant argues that her lack of criminal charges since she moved to California approximately a year ago weighs heavily in her favor; however, Defendant had multiple outstanding warrants in Tennessee when she relocated to California, including warrants for Failure to Appear and violating her probation. Additionally, Defendant has an extensive criminal history, including more than 10 Failures to Appear and numerous probation violations, and was required to flatten at least one of her probationary sentences in prison. After initially denying any illegal substance use for a period of more than two years, Defendant admitted to extensive and current use of illegal substances after being placed on pretrial release, which is confirmed by her positive drug screen.

Moreover, the explanation Defendant provided regarding her residence further underscores the Court's concerns about Defendant's lack of candor. Neither Defendant nor Ms. Flores have

significant income and Defendant reported receiving food stamps but claimed she and her wife (who also had very little income) owned a home free and clear with a minimum value of $250,000. In fact, she paid only $4,000 to purchase the home online. Despite Defendant and Ms. Flores having every reason to believe that they had not really purchased the property, Defendant offered it as collateral and did not mention any potential issues with title to the property. The Court finds that it is highly unlikely that Defendant and Ms. Flores would be permitted to continue to occupy the home long term, given these circumstances. Given her lack of employment and income as well as the circumstances surrounding the California home, the Court finds that Defendant cannot demonstrate any stability in her living circumstances. Moreover, Defendant has already violated the terms of her pretrial release by testing positive for opiates after release, as evidenced by the petition for revocation [Doc. 37] in this cause. Given the above, the Court finds that factor three weighs heavily in favor of detention.

Factor four, as set forth in 18 U.S.C. § 3142(g)(4), requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." As already addressed above, Defendant's alleged role in the introduction of large quantities of methamphetamine to the community and her ties to a drug cartel present a serious risk of danger to the community; however, on numerous occasions the Court has found that risks such as this can be adequately addressed through conditions of release. The difference here is that Defendant has been dishonest with Pretrial Services and the Court in numerous and significant ways. She continues to use drugs and stated, at least in her initial interview, that she had no desire for treatment. Further, the Defendant lacks a stable home, and her spouse is a convicted felon with an outstanding warrant for a probation violation. Given the facts addressed herein, the Court finds by clear and convincing evidence that no condition or combination of conditions of release are sufficient to reasonably assure the safety of the community. Furthermore, the Court finds the Government demonstrated by a preponderance of the evidence that Defendant poses a flight risk which likewise cannot be

adequately addressed by any conditions of release, due to her extensive history of failing to appear, her probation violations, her lack of stable residence, her ties to a drug cartel and lack of ties to the community, and her continued drug use.

Of note, it is now clear that Defendant and her wife presented untruthful and inaccurate information to the California Pretrial Services Office, the United States, and Judge Stevenson which they relied upon in initially determining Defendant should be released. Had Judge Stevenson been presented with the full picture regarding Defendant's criminal history, ongoing substance abuse, and lack of bail resources and ties to the community in California, this Court strongly suspects her decision as to release would have been different. That conclusion is based primarily on the number of factors she relied upon to release Defendant which have now been shown to be untrue.

## V. CONCLUSION

Accordingly, the Court **RECOMMENDS** that the United States' Motion for Review of Release Order [Doc. 9] be **GRANTED** and Defendant be detained pending trial.[4]

Respectfully submitted,

s/ Cynthia Richardson Wyrick
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).